May it please the court. My name is Christopher Hayes. I represent the appellate Ramelus Bradley. I represented Mr. Bradley at the trial level as well as appointed a CJA counsel. My opening argument is 11 minutes with four minutes in rebuttal. This appeal arises after a trial by jury in which Mr. Bradley was found guilty of all three counts. Possession of cocaine with intent to distribute, possession of cocaine-based with intent to distribute, and being a felon in possession of a firearm. Mr. Bradley filed the appeal raising four issues for consideration. The first issue is whether the trial court erred in overruling Mr. Bradley's motion to quash the search warrant. Standard of review is de novo. Mr. Bradley argues that the search warrant did not contain sufficient probable cause for the issuance of the search warrant. Counsel, before you get too far into it, address the Faulkner case. Yes sir. In regards to the Faulkner case, the difference between Mr. Bradley's case and the Faulkner case is that the Faulkner case is a case of a defendant's own. There's specifics in regards to the location of travel from Chicago to Minneapolis. The confidential informant provided the home address to law enforcement and the vehicles owned by Mr. Faulkner are registered to specific addresses provided by that confidential informant. In our case, the concerned citizen did provide a vehicle registration number for Mr. Bradley's vehicle. However, the license plate provided was incorrect. In addition, in Faulkner, the court noted that the finding of probable cause to support the GPS affidavit was a close call. You mentioned the license plate. The license plate was incorrect, but it was pretty darn close. I think the two letters were wrong, but the four numbers I think were absolutely correct. Does that make a difference that it was pretty close? Yes, your honor. I think it makes a difference that it was pretty close. However, it's my understanding that the concerned citizen was unable to provide a make and model for the vehicle, only able to provide the style of vehicle being a pickup truck and the color of the vehicle. In addition, information provided by the concerned citizen only provided a generic description of Mr. Bradley being a black male in his mid-thirties, short, stocky, wearing a baseball cap, backwards baseball cap. And in regards to the reliable confidential informant number one, it's my understanding that that particular confidential informant was involved in a controlled buy involving law enforcement. However, law enforcement officers did not specifically note in their affidavit that the controlled buy was reported, that any sort of controlled buy money was recorded or documented. Why is that required? Why would that be required? Well, your honor, that brings me to my second point in regards to our motion for the Franks hearing. It's Mr. Bradley's position that without the supporting documentation of having the concrete evidence of the cocaine base that was sold, uh, the, uh, any audio or video evidence, uh, documenting, uh, that controlled buy or, uh, controlled buy money, that that is considered material, even though it was not used at trial. Okay. On this one, I think you agree that the Harrington case controls and this would require an overruling of Harrington? Uh, yes, your honor. Uh, in my brief, I, I noted that we are requesting an expansion of Harrington to include the probable cause statement as compared to just a material witness that's be called at trial, uh, in particular, uh, materiality. Uh, even though, uh, the government, uh, did not call the, uh, individual that was because that is what led to the initiation of this case. If not for that, uh, control by the probable cause statement, uh, would only contain information in regards to two concerned citizens and, uh, the officer testifying that, uh, he noticed unusual activity, uh, in regards to involving, uh, the sale of narcotics. Um, therefore, we, we are requesting that the court consider expanding, uh, the, uh, rule in Harrington, uh, in regards to, uh, what is considered material and what information should be provided in regards to the information contained in the probable cause statement. This is kind of an unfair question, but just to what extent does the Faulkner case also control this issue? Faulkner has some quotations, right, that are similar about how much the informant and tempsters give valuable information and that, that feeds into Harrington. Do you follow my logic? That's why I say it's kind of a bad question, but if you follow the question, address it. Absolutely. Um, when it comes towards the amount of information provided, uh, in the Faulkner case, as compared to what was provided, uh, in Mr. Bradley's case, uh, it appears as though, uh, the, uh, officer that completed the, uh, affidavit for the, uh, search warrant in Faulkner was able to provide more specifics, uh, in regards to what the confidential informant informed him as compared to what was provided by the reliable confidential informant, number one, concerned citizens, number one, and number two. Uh, we are requesting the opportunity to dig beneath the four corners of the, uh, probable cause statement in support of the, uh, search warrant in order to go on ahead and test the materiality of the, uh, information provided by those confidential informants, uh, without the, which is referenced in Faulkner that, uh, and without the, uh, actual control by money, uh, we would only be left with a, uh, fair assertion that the officer, uh, was either mistaken or incorrect in regards to completing his, uh, probable cause statement. It's, uh, our position that without the issuance of the GPS warrant, the appellant's residence and vehicle would not have been searched and the controlled substances and firearms not located. This material information should have been disclosed to Mr. Bradley as this information is not immaterial. It is on the, uh, defendant, uh, to show materiality, uh, in regards to requesting the, uh, disclosure of the information requested in the motion for Frank's hearing and request for discovery. Uh, as stated in, uh, Grisham, uh, the confidential informant in that case was considered just a mere tipster. Uh, however, in our case, um, reliable confidential informant number one allegedly purchased can cook cocaine based directly from Mr. Bradley. Uh, this is supported by the statement, uh, by Detective Lunsford, uh, while, uh, Mr. Bradley immediately after the execution of the search warrant in the back of the patrol car. Uh, this is also supported by the statement, uh, Mr. Bradley made on the, uh, jail telephone call in regards to the only thing they'd have me, uh, for is a, uh, somebody was wearing a wire on me or somebody bought it. Well, there's a more general statement, you know, the statement right before that. The only thing that's probably going to stick is if they claim that somebody sold to me, sold to him. Um, and that's, um, that didn't make much sense to me in regards to, uh, what Mr. Bradley was charged with, uh, and reviewing a, uh, I think it's government's 53, 54, 55. Uh, Mr. Bradley, uh, made a significant amount of inconsistent statements. However, what's not inconsistent is that he, uh, specifically denied, uh, being in possession of the controlled substance located in the vehicle and specifically denied the, uh, firearm. Uh, believe that the confidential informant and Mr. Bradley's case, uh, is involved in this, uh, offense offense and not simply a mere tipster because he is the one that allegedly purchased the controlled substance directly from Mr. Uh, which, uh, leads me to our third point on appeal in regards to, uh, what Mr. Bradley argues is the, uh, 404B evidence was, was admitted at trial over the defendant's objection. The, um. Which jail was he in? Sorry, I don't. He was in the Boone County Jail at the time. Boone County Jail, Boone County, because of many notorious cases over the years, they have a clear warning, right? That everything's recorded and everything's and all that at the beginning. Oh, yes, Your Honor. That, uh, that warning should have been included on government's exhibits 53, 54, 55. But, but, well, does, does the record show that, don't let you and me make it up from the notorious cases. Does the record here reflect that, in fact, the Boone County Jail still has that message on the beginning of the, or is it not in this record? No, that, it's my understanding that it's in this record. Yeah, go ahead. Yes. Well, to what, to what extent does that affect all this? Um, the extent that I believe it affects this case right here is that the government's alleged that that was basically direct evidence of Mr. Bradley's involvement with possession with intent to distribute cocaine and cocaine vaping. It's our position, uh, that the, the second factor as stated in Kern, uh, is that, uh, we don't know what kind of dope he was talking about, both Detective Lunsford and Mr. Bradley in the back of the patrol car. Uh, and, uh, as compared to, uh, being the similar in kind, uh, now, of course, cocaine based and cocaine could be considered dope, so could marijuana, heroin, methamphetamine. And also, uh, the second factor in the current case includes being close in time to the time charged. Uh, in particular, it's our position that this is 404B evidence because there is no mention of time in regards to when he could have sold this controlled substance. The, uh, statute of limitations in, uh, state court, I believe it's three years for distribution of a controlled You don't think that the district judge could infer that these are not unrelated bad facts, that these are related or intrinsic to the crime charged? I mean, I understand your argument that he didn't say I sold dope last week or whatever, but I mean, couldn't the district court infer that this was, that he was talking about the crime he was charged with? Uh, yes, Judge. Uh, in fact, when I made my objection, Judge Boo asked, well, were these statements made after the execution of the search warrant? And I said, yes, they were. Uh, however, uh, there's a, just because it was made after the execution of the search warrant and arrest, that doesn't show how long prior this sale would have occurred. Uh, and it's, uh, the, uh, defendant's position, uh, that, uh, Detective Bluntsford informed Mr. Bradley immediately after arrest that we have you, uh, uh, we have you making a sale to me. While sitting in the Boone County Jail, Mr. Bradley says, the only thing they have me for is making a sale. Upon cross-examination of Detective Bluntsford at trial, I ask him specifically on page 111 lines two through eight, uh, do you have anything showing Mr. Bradley sold a controlled substance? And Detective Bluntsford answered no. So it's our position that this information in regards to the sale of the controlled substance was fed to Mr. Bradley, which then led Mr. Bradley to go on ahead and make that, uh, uh, statement in regards to the only thing they have me for is sales. Mr. Hayes, did, did the government have any other purpose for the admission of, um, these recorded statements? Uh, it could, uh, show that, uh, he was familiar with, uh, cocaine base, uh, that, uh, he had, um, motive to sell, sell cocaine for cocaine base. But why wasn't, why wouldn't those alternative reasons under 404B justify admission? Because the admission of that evidence in regards to the statement is, uh, more, uh, prejudicial than, uh, probative in this particular case based on the fact of the, uh, generic statement of selling dope and based on the fact that there is no reference to time other than the um, admission was made after the search warrant was issued. Uh, your honors, I'm, I'm, uh, thank you for your time. Thank you, Mr. Hayes. Ms. Kummer. Good morning. May it please the court. My name is Lauren Kummer and I represent the As the court was already hearing and has read, this case arose after an investigation that resulted first in this GPS tracking warrant that's been the subject of this appeal, which authorized officers to apply a tracking device to a truck that was registered to Romulus Bradley and later in the execution of a search warrant for that truck, as well as a residence in Columbia, Missouri. At the time of the search warrant, Romulus Bradley was the only adult in the home that was searched and was found in close proximity to several firearms. His truck outside was also searched and the console contained cocaine, more than 18 grams of cocaine base, a digital scale and other drug related items. Um, as you heard, Mr. Hayes described Mr. Bradley as first challenging the probable cause supporting the original GPS tracking warrant that was applied to his truck. And as our brief sets out, this was actually a fairly, um, detailed probable cause statement that was provided in the state court for this warrant. It's 22 paragraphs long. Um, it summarizes information from two cooperating citizens, both of whom had given information to law enforcement in the past and had never been unreliable. Um, they both gave general information alleging that Bradley was a drug dealer. There was also a crime stopper tip from a few months prior alleging that Bradley was a drug dealer, identifying his street name and, um, also identifying his truck. Although as the court has already noted, he was off by a letter on the that the tracking warrant was applied to. And there was also information from a reliable confidential informant who actually participated in a control by that was described in the warrant, which took place only four days prior to the warrant and also involved the same truck. Well, why wouldn't, why wouldn't that make that individual more than a tipster, someone who, who was a material witness that the defense ought to be able to, to know and, and, uh, investigate? Well, Your Honor, um, that control by was used to establish probable cause for this tracking warrant, but it was not charged in the federal case. So that individual was not a necessary witness to our federal, um, to our federal case. There was also, I mean, there was no conspiracy allegation or anything else that would have made that prior conduct, um, necessary to the defendant's defense. And I think this kind of relates to the defendant's argument with Harrington. Um, you know, Harrington sets forth circumstances where the government's privilege should yield to the defendant's interests. And it makes sense, you know, there's obviously a strong interest in the government's side, um, to being able to protect the confidentiality of informants and encourage citizens to come forward with information. It makes sense for that to yield, um, in a, in the context of an actual criminal case where the individual's liberty interests are at stake with conviction. But the standard for probable cause for obtaining a search warrant is so much lower, obviously, because the defendant's interests are really more of a privacy interest and not the actual deprivation of liberty. And, um, I think the government's interest kind of for the reasons set forth in Harrington needs to be primary in that circumstance. So you, you just be very careful about what you charge and you can run around the rule in Harrington, right? Well, I don't know that it's, I don't think the government's, you know, setting out to, um, kind of run around the defendant's interest in a nefarious sense, but I think. Well, you're selectively choosing what to charge. That's, it's true that the government makes a decision about what to charge, but I guess there are a number of factors that go into that that aren't, um, I guess intended to undermine the defendant's liberty or, um, interest. Is there any case that uses we're into kind of a motive area here? You, you picked up on that. Pardon me? We're into kind of a motive area here. You picked up on that wisely. Is there any case that takes the motive approach to Harrington? I, I'm not aware of one, Your Honor, and I, I somewhat believe it should be irrelevant as long as there's no, um, infringement on the defendant's interests. Hollis doesn't, does it? The Hollis case, are you familiar with the 2001 case? You know, Your Honor, I am. I remember reading it as I prepared my brief, but I'm not, okay, tracking it. But as far as you know, it doesn't. Not that I know of. Thank you. Um, and there are obviously a number of considerations that the government makes when charging a defendant. I guess the bottom line in this case is that the information that resulted in these federal charges came exclusively from the search warrant that took place at his house, which is actually separate from the GPS tracking warrant that's challenged in this case. Um, the information that the officers used to develop probable cause to apply that warrant wasn't really part of our, um, our charges. There is some relevance in the intent to distribute, and that obviously kind of reflects back in the defendant's jail call argument about the admissibility of the jail calls. Um, but primarily this was just a search warrant case where the government charged the guns and the drugs that were located after the issuance of the search warrant. Um, I guess turning to the jail calls argument, um, the defendant objected to these, um, shortly after the government's, uh, opening statement where I made reference to the fact that they would be included. And as he stated, uh, he had made some general statements that the only thing he would be good for is a drug charge. I think one helped. Dope. Dope. Right. Yeah, go ahead. You're right. I'm sorry, good. You're aware that's used in modern slang. Dope means good, too? Oh, I did not know that. I'm pretty sure of it. Okay. And I can't even understand the rappers, but I'm pretty sure that that's what it means. Go ahead. I, that was not part of the record in this case, so I can't. Okay, thank you. A very good answer, counsel. Sincerely, a very good answer. The, um, the jail calls in this case, the context of the jail calls is that the defendant had initially been arrested and charged in state court and was held in Boone County Jail until he, until we sought federal charges. And the Detective Lunsford had testified that he was charged, that Mr. Bradley was charged originally with trafficking in the Missouri offense. And so the context of the jail calls in some respects was a reaction to those charges and, um, how his conduct might have fit those charges and why he was convicted for that. Um, the evidence was obviously quite probative. But what was the precise statement that was introduced and what was the purpose for which the government introduced it? I'm sorry, Your Honor, just pulling out my exact quote so I get it right. The, the two statements that I believe he was challenging that I found in the jail calls, there was a quote that the only thing that's probably going to stick is if they claim that somebody sold to me. That was in six on track, uh, exhibit 56 at track three. Or that the only thing that they really got me on is if somebody claims they wore a wire to do something. Again, that sort of implication of that. Um, so what's that introduced for? What's the purpose? The purpose of it, again, it was sort of inextricably intertwined with the rest of the jail calls, which were the defendant's reaction to the search warrant. Um, there was a extensive discussion on these calls about his truck, obviously his ownership or possessory interest in the truck. Again, what's the purpose? Um, well, in addition to the fact that they were inextricably intertwined with the other information, it was relevant to the defendant's motive and intent, um, intent to distribute the drugs that were found in the truck. Um, as I stated, you know, there wasn't a motion in limine, so this was kind of a trial objection. And, um, I do think that they were admissible for those discussion or decision whether to admit them, inquired whether they were recorded after the search warrant, and they were. Um, again, the context of the calls as a whole showed their relevance to the case, to the search warrant evidence, which is really, again, the bulk of the government's evidence in this case, or all of the government's evidence in this case. Um, and I know the defendant also makes a 403, that they were more prejudicial than probative. And as I stated in my brief, they were prejudicial, but not unfairly so. They were obviously quite strong evidence that the defendant was aware of the drugs in the truck that he had intended to distribute them. Um, they were his. Some of the calls, um, also reflected sort of some cryptic conversation about a possible, um, what the government had theorized was some sort of secret compartment that wasn't located in the truck. And that also was probative evidence for the jury to consider whether he was aware of the contents of the truck and, um, possessed the items that were found there. In your, uh, colloquy with Judge Boo, is it true that we never really know how long in time the distance is between the charge crime and the control by that you say he was discussing? That's true, your honor. And something I kind of reflected on when I went back, um, at the time the parties sort of were all aware from, uh, the discovery and preparation for trial that they were taken. These were jail calls from the immediate aftermath of the search warrant. I think they were within 24 hours of his arrest. Um, the context does reflect that to an extent. If you listen to the calls, you know, he's clearly talking about his truck. Um, there's information kind of reflecting, kind of confirming the recency of the search warrants. Um, but it was not part of our discussion with Judge Boo, the exact timeline. Um. Did he inquire about time? I thought he inquired some way about time. Did he not tell me? No, you were correct, your honor. He inquired just whether the, um, calls were recorded after the search warrant. Okay. He did not inquire. And that's the whole, that's the whole time sequence after the search warrant. That's correct. And the parties did agree at that time and that, I think that was, uh, part of Judge Boo's decision to admit the evidence. Again, they were relevant and very probative, um, and I think correctly admitted, certainly under an abuse of discretion, um, standard, I think that it was appropriate to admit those calls. Uh, the defendant also made a, an argument relating to the sufficiency of the evidence. Um, I wanted to just summarize some of the evidence that supported our case on this front with respect to the guns. As I stated earlier, Mr. Bradley was found, he was the only adult in the home at the time. There were two infant children as well. Um, I think just to his, three of the guns that were found were in the living room where he was the coffee table that was very close to where he was found during the time of the search warrants. Another gun in the living room and a fourth gun was found under the pillow of the bed where one of the infants was sleeping. Um, just based on him being the only adult in the home, there was obviously, uh, Was there, was there anything ever corroborated whether Tiffany Smith was the purchaser of, I guess, three of those guns? Uh, Your Honor, I don't recall whether the government introduced evidence relating to the, um, documenting the purchase of the guns. I do know that she did testify that she purchased three guns. She wasn't definitive in identifying three guns that she purchased, but she, um, indicated that she purchased three guns that were consistent with three of the guns that were located in the house. However, she also testified that when she left the house early that morning to go to work, um, Mr. Bradley had come over to take care of the children and that when she left the house, the guns were in a box upstairs and not in the locations that they were, um, found during the search warrant. There was also a fourth gun that she did not recognize and indicated that she did not purchase. So, um, I think it was a fair inference from all of that evidence that they were Mr. Bradley's guns. Um, as we've kind of stated, there were jail call statements and You're not saying all four of them were his, right? Because she said three of them were hers. Well, as the court knows, the possession, uh, showing possession is different from ownership. You mean possessed? I, I'm sorry. I did. If I said, oh, no, no, no. Well, you just said they were his. Yeah. That's what got, that's what set me off. Go ahead. I apologize for my sloppy language because obviously, or, um, the government's burden of proof was to show that he possessed them. And it was sort of a theme of the trial that as a defense that maybe they were Tiffany's guns. The government, as I argued in the closing statement, that, um, he possessed them by exercising dominion and control over them. And I think the evidence supported that. Also, there was strong evidence with respect to the drugs, which were found in the truck, um, evidence that Mr. Bradley owned the truck, drove the truck to the house that morning. Um, with a different person yet again. Well, there was a different person that was a co-owner of the truck, correct? Yes, that's correct. Uh, I think the evidence was that he drove to the home that morning alone though. It was, there was no additional individual, um, in the truck or related to the truck on that date. And there was also some general testimony from a detective, um, from Boone County about the general relationship between drugs, firearms, and there was also $12,000 cash found inside the living room, um, and a pair of men's shorts in the pocket. And so there was general testimony linking that these items would have had a common owner, which is a location in Columbia, Missouri. Uh, that's correct. And do you know the address? It's, I want to say 4283 East Curry Circle. Good enough. Go ahead. Um, and so the, you know, the general testimony supported a common, common theme of Mr. Bradley being a drug dealer who the, uh, jury was entitled to accept and obviously did. And so the government's evidence was sufficient on that. If there are no further questions, I'll step down. All right. Mr. Hayes, I think we used up a bit of your time with questions. Uh, did you have something you felt you needed to respond to from the government's presentation? No. All right. Thank you. Court wishes to, uh, thank both counsel for your, your presence this morning, the argument you provided to the court, and Mr. Hayes, the court wishes to acknowledge that you've served as counsel under the Criminal Justice Act, and we appreciate your, your willingness to, to serve in that capacity. Thank you. Would you call case number two for the morning, please? Yes. 18-1477 Western Missouri, United States v. Turreal McDaniel.